590 So.2d 976 (1991)
Raynold HAYWARD, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2556.
District Court of Appeal of Florida, Fifth District.
November 29, 1991.
James B. Gibson, Public Defender, and Lyle Hitchens, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David G. Mersch, Asst. Atty. Gen., Daytona Beach, for appellee.
GRIFFIN, Judge.
This is an appeal of a conviction for aggravated battery,[1] which was enhanced to a first degree felony upon the jury's verdict that the defendant "is guilty of aggravated battery with a weapon". Defendant contends that enhancement of aggravated battery, a second degree felony, to a first degree felony pursuant to section 775.087(1), Florida Statutes (1989) is illegal because enhancement is not available under the statute where the felony charged is one in which the use of a weapon or a firearm is an essential element. In its brief, the state does not address this issue, contending that, assuming arguendo, the second degree felony of aggravated battery could not have been enhanced to a first degree felony, the error is "harmless" because the five and one-half year sentence[2] appellant received was within the permitted range of sentencing he could have received if the aggravated battery were scored as a second degree felony. The state is correct that the recommended range of the next lowest cell which would be applicable if this crime were scored as a second degree felony was 5 1/2 to 7 years with a permitted range of 4 1/2 to 9 years incarceration. Fla.R.Crim.P. 3.988 (Category 4). We cannot agree, however, that conviction of a first degree felony for commission of a second degree felony can be *977 "harmless" error. This is not a "scoresheet error" case subject to the type of analysis the state urges.[3] Besides, if defendant commits another crime in the future, the degree of this crime will affect his future score. If an error was made it must be corrected now.
Because we disagree with the state's "harmless error" position, we must now address the defendant's argument. Our review of the record in this case reveals that, after the close of the evidence, the trial court held a rather detailed charge conference. In reviewing the state's proposed instruction on aggravated battery, defense counsel observed that it included both means of committing the crime under the statute: either (1) intentionally or knowingly causing great bodily harm, permanent disability or permanent disfigurement; or (2) using a deadly weapon. Defense counsel requested the second mode of committing the crime be deleted on the ground that the state had not charged the defendant "under the alternative basis of aggravated battery [deadly weapon][4] but had only charged under great bodily harm". Defense counsel further reiterated the argument it had earlier made in support of its motion for judgment of acquittal that the defendant could not be convicted of aggravated battery because the state had failed to prove great bodily harm. (The defendant had struck the victim in the head with a baseball bat.) The state agreed to deletion of the "deadly weapon" mode of committing aggravated battery. Defense counsel then agreed to the use of the 3.05b enhancement instruction, merely requesting that the court specifically define "weapon". At that point, the prosecutor pointed out that a special verdict form would be required to assure that the state's ability to enhance for "aggravated battery causing great bodily harm and using a weapon in the course of committing a battery" would not be lost. Based upon the agreed instructions, the trial court instructed the jury that in order to convict the defendant of aggravated battery they had to find that the defendant committed a battery and that "in committing the battery, intentionally or knowingly caused great bodily harm to [the victim]".[5] The jury was further instructed as follows:
Aggravation of a felony by carrying a weapon other than a firearm: If you find that Mr. Hayward committed an aggravated battery, and you also find, that during the commission of the crime he carried, displayed, used, threatened to use or attempted to use a weapon, you should find him guilty of aggravated battery with a weapon.
The "special" verdict form used was as follows:
 (a) The defendant is guilty of aggravated battery with a weapon.

*978  (b) The defendant is guilty of aggravated battery.
 (c) The defendant is guilty of battery.
 (d) The defendant is not guilty.
After deliberating, the jury marked the first alternative, finding the defendant guilty of "aggravated battery with a weapon." After the verdict, defense counsel filed its motion for new trial but did not assert any objection to the instructions, the verdict form or the first degree enhancement. In its "renewed motion for judgment of acquittal" defense counsel simply argued again that the evidence of "great bodily harm, permanent disability or permanent disfigurement" to the victim or that defendant "carried, etc. a weapon" was insufficient to convict the defendant.
It appears that because the evidence of the victim's injury was sparse[6] the defense strategy in this case was to limit the availability of aggravated battery to "great bodily harm".[7] By defeating the use of a "deadly weapon" as an alternative means available to the state for proving aggravated battery the defendant gambled that the jury would acquit him of aggravated battery for lack of proof. The bet was on the chance of outright acquittal against the risk of conviction of a first degree felony. Under these circumstances, we cannot credit defendant's contention on appeal that his conviction of second degree aggravated battery was not subject to enhancement based on his use of a weapon.
What this case illustrates remarkably well is the danger of the form of verdict reproduced above in cases where the facts of a given criminal case would support a first degree aggravated battery, i.e., a battery in which the defendant intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement and uses a weapon. Lareau v. State, 573 So.2d 813, 815 (Fla. 1991). In the course of reviewing these cases, we are discovering that this verdict form is not uncommon. Unfortunately, a finding by a jury that the defendant "is guilty of aggravated battery with a weapon" is likely to lead to a reversal of the enhancement, as in this court's recent case of Randolph v. State, 591 So.2d 279 (Fla. 5th DCA 1991). In Randolph, even though the defendant shot one person twice in the chest, and shot another in the left arm and the left side of the head, leaving the victims in critical condition, the panel majority reversed because the jury verdict form, like this one, reflected only that the jury found the defendant guilty of aggravated battery with a weapon.
In the present case, we will not reverse because we have a clear record of the jury instructions and how they were formulated. The intent of the jury's verdict based on these instructions is clear. In other cases, however, where the record is not so clear, these verdicts are not going to survive. In order to protect a jury verdict supporting a first degree aggravated battery, the verdict form must be designed to show that the jury found both "great bodily harm" and "use of a weapon."
AFFIRMED.
COBB and HARRIS, JJ., concur.
NOTES
[1] Section 784.045(2), Fla. Stat. (1989). The defendant was also acquitted of two counts of sexual battery and convicted of false imprisonment. The conviction for false imprisonment was not appealed.
[2] Defendant also received five years probation.
[3] Even if the rationale of the "scoresheet error" cases were to apply the state incorrectly relies on cases such as Peeples v. State, 575 So.2d 316 (Fla. 2d DCA 1991) and Wilkins v. State, 543 So.2d 800 (Fla.5th DCA), rev. denied, 554 So.2d 1170 (Fla. 1989) which are distinguishable because they find harmless error because recalculation of defendant's scoresheet does not affect the applicable cell. Sellers v. State, 578 So.2d 339 (Fla. 1st DCA), decision approved, 586 So.2d 340 (Fla. 1991), recently summarized the circumstances under which scoresheet errors require resentencing. See also Dawson v. State, 532 So.2d 89 (Fla. 4th DCA 1988); Brown v. State, 502 So.2d 1293 (Fla. 1st DCA 1987).

In this case, recalculation of defendant's scoresheet would place him within the next lowest cell. While the sentence is not in excess of that permitted by the guidelines, given that the trial judge sentenced defendant to the minimum permitted sentence, resentencing would be required.
[4] Section 784.045(1)(a)(2)(b), Florida Statutes (1989).
[5] We note that, in a specially concurring opinion in Brown v. State, 583 So.2d 742 (Fla. 1st DCA 1991) involving the converse of the problem presented in this case, Judge Allen suggests this is the correct way to instruct the jury in cases involving both great bodily harm and a weapon. Such an instruction is, nevertheless, an awkward means to preserve the jury's option to find an aggravated battery was committed because a deadly weapon was used but no great bodily harm was inflicted. It also does not recognize any difference between the "weapon" referred to in section 775.087(1), Florida Statutes, and a "deadly weapon" referred to in section 784.045(1)(a)(2), Florida Statutes. See also Florida Standard Jury Instruction (Criminal) (Aggravated Battery) 2.a and 3.05(b).
[6] The victim's injury was described as a "two inch laceration on the forehead" a fractured finger and some brusing. In successfully defeating the motion for judgment of acquittal, the state argued the medical testimony reflected she had received an unstable fracture of her skull and without the surgery she received, she would have been permanently disfigured.
[7] Indeed, even at the sentencing hearing, the defense only argued that aggravated battery could not be subject to enhancement "because aggravated battery already involves an aggravation from a battery and therefore, under 75087 [sic] of the aggravated battery statute what effect it will have is a double bump." The court then pointed out that aggravated battery can be committed without the use of a deadly weapon and is thus subject to enhancement. Defense counsel acknowledged he was aware of that case law.