SAWAYA, J.
Four law enforcement officers arrived at a home to execute a search warrant for illegal drugs. Larry Edward Robbins answered the door, the officers attempted to enter, and Robbins shot one of them. The State’s appeal of the thirty-year prison sentence imposed on Robbins for the crime of aggravated battery on a law enforcement officer in violation of section 784.07(2)(d), Florida Statutes (2003), directs us to a series of reclassification statutes to determine whether, as the State contends, they require imposition of a life sentence.[1] The specific issue we must decide is whether the offense committed by *24 Robbins — a recidivist who qualifies as a prison releasee reoffender under section 775.082(9)(a) — constitutes a life felony pursuant to section 775.087(l)(a). If it does, Robbins must be sentenced to life imprisonment pursuant to section 775.082(9)(a)3.a., just as the State contends.
The crime of aggravated battery, which is classified as a second-degree felony under section 784.045(2), is committed when the defendant: 1) causes great bodily harm, permanent disability, or disfigurement; or 2) uses a deadly weapon. § 784.045(l)(a), Fla. Stat. (2003). Hence, there are two alternative bases upon which a conviction for this offense may be established. The offense of aggravated battery is reclassified as a first-degree felony pursuant to section 784.07(2)(d) when the crime is committed against a law enforcement officer while engaged in the lawful performance of his or her duties. Mills v. State, 822 So.2d 1284, 1287 (Fla.2002) (“[A]s reflected in the language of the statute itself, section 784.07 operates as a reclassification statute.”). The critical part of our analysis must necessarily focus on whether section 775.087 (commonly referred to as the 10-20-Life statute) applies to further reclassify the crime to a life felony as a result of Robbins’ use of a firearm during the commission of the crime. This becomes problematic if the use of the firearm was an element of the crime Robbins committed because, in that instance, the crime of aggravated battery against a law enforcement officer may not be further reclassified under section 775.087. § 775.087(1), Fla. Stat. (2003) (excepting from its provisions “a felony in which the use of a weapon or firearm is an essential element”). But if the crime Robbins committed was aggravated battery on a law enforcement officer causing great bodily harm and the firearm Robbins used inflicted the harm, then reclassification is appropriate because the firearm is not an essential element of the offense. See Lareau v. State, 573 So.2d 813 (Fla.1991); Hayward v. State, 590 So.2d 976, 978 (Fla. 5th DCA 1991) (stating that facts of a criminal case that would support enhancement of aggravated battery to a first-degree felony under section 775.087(1) include “a battery in which the defendant intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement and uses a weapon”); see also Thompson v. State, 636 So.2d 599 (Fla. 5th DCA 1994) (holding that where the verdict provided that the defendant was guilty of aggravated battery causing great bodily harm with a weapon, reclassification was proper).
In Lareau, the defendant shot his victim with a firearm, entered a plea to the charge of “Aggravated Battery (great bodily harm) w/firearm,” and was sentenced based on reclassification of that offense pursuant to section 775.087(1). The court discussed the two alternative bases to establish a conviction for aggravated battery and essentially recognized that the offense of aggravated battery with a deadly weapon may be committed when the victim does not suffer great bodily harm, permanent disability, or permanent disfigurement. In such circumstances, the weapon is an essential element of the offense. If, however, the weapon is used to inflict great bodily harm, permanent disability, or permanent disfigurement, and the state charges the defendant with aggravated battery causing great bodily harm, the weapon is not an essential element of the offense. In this situation, the weapon is “incidental to the offense.” 573 So.2d at 814. The court explained as follows:
The facts of this case require us to examine the interplay of the reclassification statute, section 775.087(1), with the *25 aggravated battery statute, section 784.045....
As we read the two provisions at issue, section 784.045(l)(a) effectively reclassifies as a second-degree felony the crime of simple battery, section 784.03 of the Florida Statutes (1985), when the defendant, without the use of a deadly weapon, knowingly or intentionally causes great bodily harm, permanent disability, or permanent disfigurement. Section 784.045(l)(b) effectively reclassifies as a second-degree felony the crime of simple battery when a deadly weapon is used, by supplementing the statutory definition of aggravated battery to include the use of a deadly weapon. Simple battery, a first-degree misdemeanor, is not subject to reclassification pursuant to section 775.087(1), which applies only to felonies. Aggravated battery with the use of a deadly weapon, section 784.045(l)(b), is not subject to reclassification pursuant to section 775.087(1) because the use of a weapon is an essential element of the crime. However, section 775.087(1) permits reclassification and the consequential enhancement of penalties for the crime of aggravated battery causing great bodily harm, section 784.045(l)(a), when a weapon is used to commit the crime.
Under this statutory interpretation, the punishment for battery increases as the degree of actual injury or potential for serious injury becomes greater. For example, a simple battery without the use of a deadly weapon is a first-degree misdemeanor (section 784.03); a simple battery involving the use of a deadly weapon is a second-degree felony (statutorily redefined by section 784.045(l)(b) as aggravated battery); aggravated battery causing great bodily harm is a second-degree felony (section 784.045(l)(a)); and aggravated battery causing great bodily harm and involving the use of a deadly weapon is a first-degree felony (section 784.045(l)(a), enhanced by section 775.087(1) by virtue of the use of a weapon or firearm). This interpretation gives consistent effect to both the felony reclassification statute and the provision defining aggravated battery involving the use of a deadly weapon, and it conforms with the legislative intent of increasing the punishment of violent crimes that involve a weapon or firearm. It is also consistent with the language in section 775.087(1) providing for reclassification of felonies where the use of a weapon or firearm is not an essential element of the crime.
Id. at 814-15 (emphasis added).
Here, just as in Lareau, Robbins was charged with an underlying aggravated battery that caused great bodily injury when a firearm was used in the commission of the crime to inflict the injury.[2] *26 Therefore, pursuant to Lareau, the firearm is not an essential element of the crime. That this is the crime the jury convicted Robbins of committing is clearly revealed by our analysis of the jury instructions delivered to the jury, the purpose of which was to define the essential elements of the crime charged. See State v. Delva, 575 So.2d 643, 644 (Fla.1991) (“We have long held that ‘[i]t is an inherent and indispensable requisite of a fair and impartial trial ... that a defendant be accorded the right to have a Court correctly and intelligently instruct the jury on the essential and material elements of the crime charged and required to be proven by competent evidence.’ ”) (quoting Gerds v. State, 64 So.2d 915, 916 (Fla.1953)); see also Battle v. State, 911 So.2d 85 (Fla.2005), cert. denied, — U.S. -, 126 S.Ct. 1069, 163 L.Ed.2d 890 (2006); Scott v. State, 808 So.2d 166, 170 (Fla.2002) (“Moreover, the jury is entitled to be instructed on the elements of an offense.”). The jury instructions only instructed the jury on the offense of aggravated battery causing great bodily harm, permanent disability, or permanent disfigurement.[3] Because the jury was not instructed that it could find Robbins guilty of aggravated battery with a weapon, it is clear that the verdict finding Robbins guilty as charged constitutes a conviction for aggravated battery causing great bodily harm, for which the use of a weapon is not an essential element. See Hayward (holding that when the jury instructions clearly instruct the jury only on the crime of aggravated battery causing great bodily harm, enhancement under section 775.087(1) to a first-degree felony is appropriate). We note that interrogatories were also included in the verdict form and the jury made a special finding that Robbins possessed a firearm during the commission of the crime, discharged the firearm, and inflicted great bodily harm on the law enforcement officer. Therefore, pursuant to sec *27 tion 775.087(l)(a), the crime for which Robbins was convicted may be appropriately reclassified as a life felony. See State v. Waldron, 835 So.2d 1217, 1219 (Fla. 5th DCA 2003) (“The defendant is correct that courts are obligated to adopt an interpretation that harmonizes related statutes while giving effect to each. However, the way to do that in the instant case is to give effect to subsections 775.087(2)(a)3. and (2)(c) where the defendant did not simply use a firearm in the commission of the aggravated battery but rather discharged the firearm and as a result of the discharge death or great bodily harm was inflicted upon the victim. Here the jury expressly found that the defendant discharged the firearm resulting in death or great bodily harm to the victim. The Legislature intended to punish a miscreant more severely where his use of a firearm results in death or great bodily harm. The Legislature chose the ‘10/20/ Life’ legislation to do this and the courts are bound to follow this law.”) (citations omitted). Robbins does not argue or even suggest that he does not qualify as a prison releasee reoffender under section 775.082(9)(a)3., and, therefore, pursuant to that statute, he is subject to a mandatory sentence of life imprisonment.
Rather than forcefully contest the State’s argument that use of the weapon is not an essential element of the crime he was convicted of committing, Robbins devotes most of the discussion in his brief to the assertion that the State waived its argument during the sentencing proceeding by conceding that the trial judge had discretion to decline reclassification and imposition of the mandatory life sentence. However, our review of the sentencing hearing transcript belies that assertion and clearly indicates that the State did not waive this argument. The confusion stems from reference to the 10-20-Life statute, where the court does have discretion (irrespective of whether the use of a firearm was an essential element of the crime) to impose a sentence of 25 years to life. See § 775.087(2)(a)3., Fla. Stat. (2003). The State conceded that the court did have that discretion, but did not concede imposition of the mandatory life sentence under section 775.082. Further, after the trial court ruled, the State specifically questioned the court about its finding that Count II was a first-degree felony and “[f]or the record [it] ... objected] to that finding.” Thus, the argument was not waived.
Accordingly, we reverse the sentence imposed on Robbins and remand for resen-tencing consistent with this opinion.
REVERSED AND REMANDED FOR RESENTENCING.
PLEUS, C.J., and ORFINGER, J., concur.

. Robbins was also found guilty of attempted second-degree murder with a firearm. However, Robbins did not challenge that conviction in the instant appeal.

. Counsel for Robbins essentially conceded that this is the crime the State charged Robbins with committing during the sentencing hearing, the transcript of which reveals the following exchange between counsel for the State and Robbins:
DEFENSE: I want to make sure I'm on the same sheet of music with the office of the State Attorney in regards to which version of the information they are referring to as far as the Count 2 allegations.
STATE: Referring to the one that is most recently filed, Your Honor.
[[Image here]]
DEFENSE: I just wanted to verify because there have been several different versions of the information in this case.
First, I take issue with the representation of the State Attorney's Office that the information in the case that was tried makes reference to great bodily harm, because it does not.
It makes reference to the fact that there was an intentional touching or caused bodily harm. So I would defer to the *26 court file in regards to the information. I believe the allegations in the information—
THE COURT: We can clear that up right now if the Clerk can find me the amended information. Okay. Where is it? Just give us a moment, please.
THE CLERK: Amended the 27th day of December, 2003? For 540, case 540?
STATE: My copy isn’t dated. It's a two-count information.
THE CLERK: Two-count information.
STATE: That’s it.
THE COURT: Can I see it just a moment, please? All right.
DEFENSE: Your Honor, the latter part of the information — the State’s pointed out to me, the latter part of the information, the second line does allege great bodily harm.
It was earlier in the count that it talked about bodily harm, so we can skip past that point and move directly into the primary arguments.
The argument that counsel for Robbins proceeded to make is that double enhancement is prohibited under double jeopardy principles — an argument not raised by Robbins in this appeal.

.The jury instruction that was given to the jury provides, in pertinent part:
To prove the crime of Aggravated Battery of a Law Enforcement Officer, the State must prove the following five elements beyond a reasonable doubt. The first element is a definition of battery.
1. Larry Edward Robbins intentionally touched or struck David M. Decarlo against his will or intentionally caused bodily harm to David M. Decarlo.
2. Larry Edward Robbins in committing the battery intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement to David M. Decarlo.
3. David M. Decarlo was a law enforcement officer.
4. Larry Edward Robbins knew David M. Decarlo was a law enforcement officer.
5. David M. Decarlo was engaged in the lawful performance of his duties when the battery was committed against him.